May I please the court, counsel, my name is Debra Anahl from the Office of the State Appellate Defender and I represent the appellant, Rodney Lee. Illinois Sex Offender Registry Act may have been a reasonable means of advancing public safety in 1998 when Rodney Lee first and Parker, the current scheme is much more onerous than the versions the Supreme Court previously upheld. The current scheme subjects sex offenders to public shaming, monitors their whereabouts, limits where they can live and loiter, and infringes on their First Amendment rights. The scheme violates substantive due process because there is no rational basis for subjecting. At least one Illinois Supreme Court case has found that the internet restriction did not violate the First Amendment. So it's just your allegations that there may be First Amendment. To clarify, that was Minnis. Minnis held that the First Amendment wasn't violated by the restriction, but it did hold that the restriction infringes upon. So it was saying that it didn't go so far as to be struck down, but the court did acknowledge that the restriction infringes upon rights. Our argument today is that the scheme violates both substantive and procedural due process. The scheme violates substantive due process because it's fundamentally unfair to subject sex offenders to onerous registration requirements and restrictions where it serves no purpose except political currency. Okay, so the right that you're saying is involved in the substantive due process is exactly what? Because there have been different rights asserted in different cases. The briefs argue for a fundamental right being violated. For purposes of today's argument, we're going to focus on rational basis review. So we're not arguing that any specific right has been violated today. We'll stand on the briefs for the fundamental rights argument. But even under a rational basis, you still have to articulate what is being, what substantive due process right is being violated. So the test for rational basis review is that the statutes must be rationally related to the statute. And so the question is, does the law constitute a reasonable means of accomplishing the stated goal? Okay, I'm still not sure. What is the right, substantive right involved here? The right to be free from government regulation? Is that what you're asserting? No, Your Honor. It's, for rational basis review, there's not a specific right. It's more about the, the law has to be fundamentally fair. And there can't be, it has to be rationally tied to some sort of interest. So, what is the interest? Sorry, but it has to be rationally tied to a legitimate state interest. So the legitimate state interest to which it's allegedly tied is public safety. We're arguing that this, the current version of the statutory scheme has become so untethered from that purpose that it's no longer, it no longer implies that the basic requirements of due process. And the reason for that is we now have legislate, sorry. And what part of due process does it violate? The basic requirement of due process, that, that government not overreach, that government not abuse its power. And this statute is a, this scheme is a great example of government abusing its power. And we now have legislative findings that affirmatively show that this scheme does not further public safety. Okay. And the Supreme Court recently in, in April of this year, in, in Papatone, states that those types of arguments are for the legislature to iron out. And it did recognize in that case that, that our courts have recognized recidivism is, is an important issue and they recognize it. And it's for the legislature to do anything else. First, Papatone involved just the parks restriction. We're challenging the entire scheme. Second, the, the deference to the legislature is intended to be a general rule. However, as the Supreme Court, United States Supreme Court said in Peckingham v. North Carolina, the assertion of a valid governmental interest cannot in every context be insulated from all constitutional protections. So we have Justice McDade in, recently in Kocobar, in the third district, talked about the important role that courts play in policing constitutional boundaries. I am paraphrasing. But yes, we defer to the legislature when the legislature is doing its job. It's also the structure of our government is set up so that courts step in when the legislature isn't doing its job. And here we have, we had in 2014, we had a report suggesting that was for the juvenile commission, what needed to change, what the problems were. Nothing has happened since then. We now have a new report issued in December of 2017 that explicitly says this statute is not serving the interest of public safety. It outlines 14 recommendations. And importantly, those recommendations are contingent upon... Are you referencing Kocobar? I'm sorry? Are you referencing Kocobar? No, I'm registering the task force report that we cited in our motion to say additional authority. It's the, it's legislative findings about the current state of, of what needs to happen to the, to make it comply with constitutional requirements. Actually, it's the legislature commissions the report to try to find out if the current scheme was achieving public safety and if not, what they could do to make it comply with public safety. Everyone seems to be stuck in referencing Malkavoy. How do you, how do you get past that case? I'm sorry, I couldn't quite hear you. What did you ask? I'm sorry. I'm trying to figure out how it is that you want us to not look at the Illinois Supreme Court case and dealing with this issue when everyone seems to keep referencing it. Mal, is it, how do you pronounce it? Malchow? Malchow or Malcoy? Mal, I think, I'm not sure how you pronounce it either. I'm calling it Malchow. I don't know what's correct. So Malchow and Cornelius and before them Adams interpreted a very different scheme from the one that we have before us now. And again, referencing Kokobar and Tedder, in those cases, the third district found that those, those earlier decisions weren't controlling because the statute's changed so dramatically that it's essentially a different statute. Okay, but Malchow dealt with whether there was a penalty involved. Correct. And whether there was ex post facto law and proportionate penalties. You are not arguing that. That's true. And all that part in your brief really is not something we even need to address. Is that correct? It's correct that this court You're saying that the statute's changed so much that any cases before 2014 are not significant. So first we're saying in terms of the issue of punishment, this court definitely does not need to hold that it's punishment. It is, however, relevant to the question of whether the statute has evolved into something that violates due process. And the reason it's relevant is because if all it's doing is punishing without achieving public safety Okay. And yet every case that has come up dealing with substantive due process or procedural due process since 2014 in this district has found no substantive or procedural due process violation. And they have considered the statute as it currently is drafted. So why should we not follow those cases? Because of the task force report, which is legislative findings. I think it was Avila Briones and also Rodriguez said that one of the reasons why this court couldn't find a violation is because there was nothing in the record to show what was wrong with the statute. Here we have now in the record, in these legislative findings, we have all of the detailed explanation of why the statute is not achieving public safety. And importantly, we have the legislative committee saying we can't 100% stand behind these recommendations because they're contingent upon funding and they're contingent upon politicians reaching agreement. And we know that sex offenders are the most unpopular group that there is, or at least one of them. And it's not, I mean, there's one law in the article, and I'm sorry, I don't, it's not cited. I did not write the briefs in this case, but it says that, and I'd be glad to cite it after argument, but it says that putting forth new laws against sex offenders has become a rite of passage for the legislators in Illinois. And I think that's borne out, it is borne out by the fact that there's been at least 24 amendments since the registry was first enacted. So essentially what this legislation is now is just a way for legislators to get popular with their constituents and to appease fears, and that would be okay if it was serving some sort of purpose. But it's not serving any legitimate purpose, and it's actively harming people. But every provision that you cite has been discussed and found to advance a rational basis, you know, in particular like the Avila-Briones case, which was, again, cited by Justice Tice in the Peppertone case. And she directly quoted from it and said that whether the statutory scheme covering sex offenders as a finely tuned response to the threat of sex offender recidivism is not a question for rational basis, that's a question for the legislature. And again, Your Honor, I recognize that. I also suggest that given that none of those decisions referred to the new legislative findings, that that... Avila-Briones, oh, the findings. Correct. But that tips the balance, as we now have affirmative evidence that this legislation is not serving public safety, and therefore it is not a reasonable means to accomplish that goal. And that's why it violates substantive due process. Essentially, the legislation violates substantive due process because the regulations go too far with too little justification and, importantly, with grave consequences for the registrants. Judicial oversight of unconstitutional legislation is appropriate. I therefore ask that this Court strike down the scheme as violates of the substantive due process. And then the alternative, the scheme also violates procedural due process because there's no mechanism for adults to petition for termination off the registry. The scheme labels people according to their offense without any regard for whether they pose an individual risk The new legislative findings establish, affirmatively establish, that this one-size-fits-all approach actually reduces public safety. Allowing petite people to petition off the registry would further the purpose of public safety because it would allow for the scant resources to be focused on those people who actually do pose a high risk of recidivism. And for all these reasons, this Court should hold that the current scheme violates procedural due process. Let me understand you again. You have no argument in terms of the new legislation, the 2014, being punitive. Is that correct? I'm not asking this Court to hold that it's punitive. Say that again. I'm not asking this Court to hold that it's punitive, like legally punitive for constitutional purposes. A, I did not write the briefs. And B, my understanding of that argument is that the punitiveness of the provisions goes to show why they're unconstitutional because it shows that in addition to having no legitimate state purpose, it crosses constitutional boundaries to subject people to punishment when there's no legitimate interest. So that's why the punitiveness is relevant. But this Court does not need to actually hold that it's punitive to reach the agreement. But to reach the issues that you've raised, substantive and procedural due process, there's no analysis like under Malchow and the factors, the Mendoza whatever factors, are not necessary for us to do, right? Correct. Yes. And if this Court has no further questions, I would like to reserve my remaining time for rebuttal. Thank you. Good morning. I'm Assistant State's Attorney Mary Boland on behalf of the people. I wanted to point out, I wanted to start by clarifying just a couple of things before I get into the argument. And one is this task force report. The task force was established by the legislature, as it does in many cases, to look at a given field and make some recommendations. The task force report examined the offenses. It held public hearings. It heard from the public. It heard from different academic presentations. And it made some recommendations to more effectively classify sex offenders. That doesn't render anything that exists in law unconstitutional, nor was there any kind of finding that there was a constitutional problem based on the task force report. It does exactly what the legislature seeks task force reports to do, and that is look around the public, look around the country, see if there's ways that we're doing it that could be improved over the course of time. That's one of the reasons that we have a number of amendments. But there is nothing in this report that talks about substantive due process, procedural due process, proportionate penalties, or any of those things, because that was not the function of the task force report. And I know that because I sat on this task force as part of our office's involvement. So the challenge that this statutory scheme is rationally related to its interests. Now, the rational relationship issue isn't really challenged in any of these cases. The question in some of the cases, like Kochevar, and again, I don't know if I'm saying it exactly correctly, Kochevar is what counsel calls it, but Kochevar and Tedder, those are those third district outlier cases. They're dealing with proportionate penalties arguments. So they necessarily had to decide whether it was punitive or not for purposes of their analysis. And when you look at that analysis that they did, they are so far outliers. Tedder, its first case, just before Kochevar, Tedder came out on July 20th of this year. Kochevar just came out in August. If you back up to Tedder, Tedder initially was decided in January and then granted a re-hearing. So that's why it took a little bit of time. But Tedder relied on its own decision in Pepitone. And as we know, and the Court pointed out, Pepitone has now been reversed by the Illinois Supreme Court. Why? Because Tedder started out from this notion that somehow this is innocent conduct. The Supreme Court said, no, it's applied to convicted sex offenders. It's not a person strolling in a park. It is a convicted sex offender strolling in a park. And that is within the purview of the legislature. And that's where that discussion came in. And it not only cited to Revere-Briones, but in Pepitone, they also cited to Parker, Pollard, which is a 5th district case. Rodriguez, which is our district again. Parker is also the 1st district. And the Supreme Court said, you know, we conclude that there's a rational relation between protecting the public, particularly children, from sex offenders and prohibiting sex offenders who have been convicted of crimes against minors. In that case, the challenge was to the parks and the playgrounds, proximity restriction. But it was a scheme analysis by the Court. And one of the things the Court said, and I thought this was a very important comment, was a stronger protection of the public imposes a heightened burden on a sex offender. So defendant is correct that over the years, SOAR has evolved. There's no question that it has evolved. It has evolved to the point, counsel, that it violates a registrant's due process rights. And that's the issue before us today. That is the issue. There's so many additional changes from the 1998 law to the 2014 one that certainly gave rise to the arguments today that they are so onerous as to the imposition of a lifetime registration. Yeah. And it is true. There have been quite a few evolution changes in the SOAR statute. And one of the reasons is it's trying to keep up with exactly what the defendant was pointing out, is that now we have the Internet. We have Facebook. We have all different ways for convicted sex offenders to reach out to their potential victims. And we're trying to address that as a matter of public policy in SOAR as part of the surveillance and the monitoring. There is no cross-board restriction. And not all registrants are online predators. That's true. But the United States Supreme Court— Where is the narrow tailoring? Ah. You know, that's right. So there is no narrow tailoring, and there needs to be no narrow tailoring. As the defendant pointed out in argument this morning, they're not going to argue that fundamental right analysis. And if you have a fundamental right, then we have to have a compelling interest, and it has to be narrowly tailored, right? That's the analysis for that argument. The defendant is not making that argument. The defendant is simply saying, I don't think there's a rational, legitimate interest in the protection of children and the protection of the public in this forward-looking statute. And that has been soundly rejected. There are no less than five published opinions from this district alone since the 2015 decision in Avila Brion's. So Avila Brion's and all of the other cases—Rodriguez and Parker and AC—all of those cases, I counted out, there are no less than 13 justices in this district alone that have all agreed that SOAR remains constitutional. And yes, it's more burdensome. Yes, there are some issues that the defendants have to meet as obligations that they didn't have to meet in earlier versions of the statute, but they're still finding it rationally based because the statute doesn't have to be narrowly tailored. It can regulate this class of offenders. That's from the U.S. Supreme Court. And the Illinois Supreme Court, I should point out, in the MA case, which was a 2015 case involving a similar registry, the Violent Offender Registry, which also, as a class, sets regulations based on certain types of offenses. Some states don't. And the defendant has cited lots of other states that have different types of systems. And every different state has a different SOAR. And that's one of the points that I was making here. And I made in the MA case and I made in some of the earlier cases as well, is that you can't take the Michigan SOAR and try to mirror it to the Illinois SOAR. And the Illinois Supreme Court and the U.S. Supreme Court have said we can regulate as a class, we do regulate as a class. And multiple courts, including the Fifth District as well as the First District, have held that this comports with substantive due process and then procedural due process. Of course, as this Court knows, the procedures have to be relevant to the scheme itself. Since this scheme is class-based, it doesn't have to have a risk assessment procedure. But I would point out that the Illinois legislature has acted on the registry issue, and at least with regard to juveniles, does allow a petition off the process now. So the legislature is responsive to these various reports and task forces and information as it comes forward and chooses then to change a public policy or to increase a public policy on that basis. And that is something that our legislature properly does. And I point out that MA and some of the other courts have said, yes, we think some of these policy changes should be looked at by the legislature, but that's the point of the legislature. It's not the point of determining the threshold of constitutionality. These statutes meet a constitutional requirement. I would point out also one other thing, because I jumped into my argument and I started answering questions. You would completely dismiss the cases out of the Third District. Is that correct? Yes. I can distinguish them, too. I normally would dismiss them, because if you read them, especially culturally. Absolutely. I'm sorry, I didn't hear you. Let's all talk at the same time. How are you distinguishing them? So I distinguish them because both Tedder and Cochran were proportionate penalty as applied determinations. Those arguments are not raised here. So even if you were to look at those cases, they simply don't raise the arguments and their holdings don't have any application to our case, which is a substantive due process and procedural due process. I did want to alert the Court that yesterday in my notices, I did get notice that, and I was talking to counsel about this, because counsel argued Bingham, down in the Supreme Court. People v. Bingham, which is docket number 122008, the Court announced yesterday that it expects to release that opinion Thursday. So that may also provide some guidance for this Court. Bingham is a challenge to SORA. It's an as-applied challenge. It also involves an ex post facto issue that's not present here or raised here. But I'm not sure what the Supreme Court will say. I just wanted to point that out to this Court. It's an as-applied. Yeah, and it's an as-applied. So I don't know how relevant or how useful, but I wanted to alert the Court that that is coming out. And our first district has considered Tedder or Trotter? Tedder, yeah. Terry Jones. And they've distinguished it. That's right. It's a case in 2018 in this district, did not follow Tedder. And the reason was that it would leave trial courts with a task akin to picking through landmines to decide which restrictions were unconstitutional as applied to which defendants. So D'Oriente Jones, which I cited in my brief, did not follow Tedder, instead followed our Supreme Court precedent. And, of course, the precedent in this Court, of which we have multiple opinions. And so we would ask that this Court affirm defendant's conviction and find. But today the Supreme Court has not completely addressed these various positions among the districts. You know, that's true. But in M.A., the. . . Well, there is a concept of stare decisis when something is very well-reasoned. It's so well-reasoned that the Illinois Supreme Court points to the rationale in Avila-Briones and other cases, Parker and Rodriguez. The Supreme Court specifically said that these courts in this district correctly identified the constitutional nexus. And that's the current version of the challenge. So these are not old challenges. Like, Malchow was a little bit older challenge. That's puppet tone just came out this year. And then I made the argument in M.A., which was the violent offender registry, the defense used as a comparator for an equal protection challenge and a due process challenge, the soror registry. And, of course, the Court had no issue with regard to the constitutionality of the soror registry. Although that issue was the violent offender registry. So the courts had a couple of opportunities to look at soror. But you're right. Most of the opinions are in the appellate court. But this district. . . In Avila-Briones, that was the first decided case under the current version of the statute. The statute was amended in most part in about 2012. There have been very minor amendments, none of which have really changed these arguments. But all of these cases after Avila-Briones, after 2015, have upheld substantive due process and procedural due process. I point out, too, one last point, is Zetterland, that I cited as additional authority, is a third district case decided this year. Zetterland also finds its components with substantive due process and procedural due process. So while Kochevar and Tedder were these as-applied proportionate penalty cases that they decided differently, actually just a few months earlier in Zetterland, they held it does comport with procedural due process and substantive due process. So, again, different arguments, different applications. Here we have a facial challenge there. They had as-applied challenges. But I think this court has amply and carefully looked at this issue. It has applied Mendoza-Martinez in detail several times, as I pointed out in my brief. And so this court should affirm defendant's conviction. Thank you. Thank you. All of the prior cases haven't considered the legislative findings. It's true that the legislative findings embodied in the task force report did not say that this statute violates any sort of constitutional rules, but that's because that's not the job of the legislature. That's the court's job, is to set constitutional boundaries. Tedder and Kochevar, or Kochevar, I don't know how you say it either, are not outliers nationwide. They are in line with an emerging trend. Also, Tedder and Kochevar considered far more than just the park restrictions. They considered all of the effects of the statute more comprehensively, I think, than most other decisions. But they considered it in the context of whether it was a disproportionate penalty or punishment in those particular cases under those particular facts. That is true, Your Honor. And as counsel pointed out, opposing counsel, Zetterlund reached a different decision. And they had a broader issue than that one, similar to what we have here. Yes. Justice McDade's dissent in that case talks about she's going to, you know, she concurs and doesn't dissent. Sorry, it's not a dissent, it's concurrence. But she concurs with the finding because she says the current law is clear. However, again, all of these decisions did not discuss the legislative findings. Okay. Tell me how we're supposed to consider those. You know, all of a sudden now, before this case is over, there's these legislative findings. How do they intersect with what we must do here when it wasn't, you know, it wasn't before the trial court? It hasn't been digested by the legislature. It certainly hasn't been subject to any kind of adversary proceeding within the court system. So what are we to do with that report? Well, it's subject today to an adversary. I mean, this is an adversary proceeding in the appellate court in which we're bringing this forth. And I think that this is very strong evidence that shows that the legislature has not, it's not achieving its goal of public safety. And it seems to be not really caring about achieving its goal of public safety, but instead concerning itself with politics and trying to do what's going to be popular to help. The public likes these laws because they make them feel safe. But the problem is they aren't making people safe. They're actually harming public safety because they're diverting scarce resources away from people that are actually going to be posing a threat. And instead making, you know, I think there's 36,000 people on the registry now. And there's so many people subject to life that it just keeps growing. And so there's this limited number of law enforcement people having to keep track of all of these people. And most people who are on the registry are compliant because they're complying with the registry and therefore they want to be doing the right thing. So the court is important because it actually is evidence that shows that despite the deference this court normally pays the legislature, that deference is no longer owed when the legislature is affirmatively not achieving the goal. So that's why the statute violates substantive due process. And it violates procedural due process because there's no procedure for people to get off the registry. And... Which is an argument that has been considered right by our courts and been rejected as... Correct. But again, it's never been rejected... As a procedural... It's never been rejected as... It's never been rejected in light of these findings which are evidence that show the legislature is not actually achieving the stated goal. And the rule for rational basis review is that if it's not rationally related to a goal, then it violates due process. Is this not an over-inclusive, under-inclusive argument? It's not an over-inclusive, under-inclusive argument specifically. It's... And I get confused about that because that language is usually used for First Amendment cases. I know that it was used in the briefs in this case. And I know that this court has previously said, you know, the statute may be over-inclusive, but it's still rationally related. And those decisions have said because there's not enough evidence to show that it's not achieving the goal. And here, I'm sorry to be so repetitive, but again, these new legislative findings are exactly what evidence... What is the current status of these new legislative findings? The report has been issued, and there are 14 recommendations, which I am not going to read because you have them, and it would be tedious to have to listen to them. But basically, they're... In a nutshell, they're saying to the legislature, you need to be using evidence, you need to be using research. You can take from that that they're currently not using evidence, not using research. And they recommend several things, including that the registry not be retroactive, which is one of the issues in Bingham. They recommend exactly what I'm saying. There should be some sort of procedure in place to let people position off the registry. And there are several others. I can't remember them all. But importantly, unlike the 2014 report that this court said, you know, wasn't precedent in... I think it was AC. This report has two contingencies. It says we're making these recommendations, but the recommendations are contingent upon enough funding. And the language is a little bit strange, but the way I read it is it's contingent upon finding something that everyone in the state can agree to implement. So from that, I think what they mean is it's subject to politics. And there's no... Sex offenders don't have a lobby. There's no one who's going to go stand up for them in the legislature and say... I mean, I think in the... I can't remember which decision, but one of Justice McDade's decisions, she talks about how it's... No one's championing liberty. People are championing these requirements that are assuaging public fear. They're politically popular. That's exactly the role of courts, to stand up for liberty, stand up for people's rights who are not able to stand up for themselves. And this report gives this court the reason that's different from all the prior cases. You talk about the recommendations, and certainly, you know, obviously it's beyond us to say that the legislation... or order that legislation be amended. Right. But what about the evidence? I mean, that you're talking about. How do we know what the foundation for this evidence is, the reliability of this evidence, who makes these findings? Should I grab my report? I mean, just tell me. That really hasn't been tested in the court system. So the legislature is charged, and one of the reasons why courts give deference to legislatures is because they say the legislature is the proper place to hold hearings, to listen to evidence, to do all of these things. Most of that happens through committees. So what this report is, it's a written summation of that process. So it's showing all of us, okay, the legislature's gone, it's held hearings, they say they have the most current and scientifically rigorous research available, and it's summarized in the report. So all of that evidence is summarized in the report. So the hearings have been held, all of that. It doesn't need to be tested because it already has been tested. That's what the report is. The report and opposing counsel is part of that process. It brought together all of these different parties. It brought together states' attorneys. It brought together, there were some victims. There's testimony from victims in the report. Sorry, I'm saying victims. I actually mean sex offenders because to me they've become victims, but that's not appropriate. And anyway, all of that, and it is a little bit unusual, but the situation is unusual. I don't know that we often have legislation that is permitted to just run amok in the way that sex offender registry has been printed. It is a train that is off the rails, and no one's going to stop it except for the courts. It still must admit that, although it's a report and perhaps exhaustive, that it's still not case law. That is true, Your Honor. I'm just hoping it will be case law. I am, and I'm hoping for a lot of reasons. Thank you so much. Thank you, Paul. Thank you. The case will be taken under advisement.